UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| MARTHA E. MCCARTER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:16-CV-385-CCS |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 20]. Now before the Court is the Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 17 & 18] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. Martha E. McCarter ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **GRANT** the Plaintiff's motion, and **DENY** the Commissioner's motion.

I. **PROCEDURAL HISTORY**

On November 8, 2010, the Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1385, claiming a period of disability that began on October 8, 2008.

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

[Tr. 200-10]. After her application was denied initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 119]. A hearing was held on January 19, 2012. [Tr. 28-41]. On July 27, 2012, the ALJ found that the Plaintiff was not disabled. [Tr. 81-94]. The Appeals Council granted the Plaintiff's request for review, finding that vocational expert testimony was necessary. [Tr. 99-101]. The case was remanded to the ALJ for "a new decision" with specific instructions to give further consideration of the Plaintiff's residual functional capacity ("RFC") and obtain supplemental evidence from a vocational expert regarding the effect on the Plaintiff's RFC on the occupational base. [Tr. 100-01].

On remand, a second hearing was conducted. [Tr. 43-73]. Thereafter, the ALJ issued a new decision on December 16, 2014, again finding that the Plaintiff was not under a disability. [Tr. 15-22]. The Appeals Council denied the Plaintiff's request for review. [Tr. 1-6]. Therefore, the ALJ's December 16, 2014 decision became the final decision of the Commissioner.

Having exhausted her administrative remedies, the Plaintiff filed a Complaint with this Court on June 24, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.　ALJ FINDGINS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since October 8, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: major depression and post-traumatic stress disorder (20 CFR 404.1520(c)

and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: for the following limitations: no exertional limitations; no dealing with the general public; little or occasional interaction with supervisors or coworkers; and only simple, routine work.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was 47 years old, which is defined as an individual closely approaching advance age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 8, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 17-21].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. ANALYSIS

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff asserts that substantial evidence does not support the ALJ's RFC determination because the ALJ did not properly weigh and consider the opinion of licensed clinical social worker, Charlene Allen, or the opinion of consultative examiner, William Kenney, Ph.D. [Doc. 18 at 13-18]. The Plaintiff further maintains that the ALJ's credibility determination is not based on substantial evidence as the ALJ only considered the Plaintiff's unsuccessful work attempts. [*Id.* at 20-21]. Finally, the Plaintiff maintains that the ALJ failed to comply with the regulations promulgated by the Commissioner when the Plaintiff's medical records were not given to consultative examiner, Greta Smith, Ph.D., for review. [*Id.* at 21-22]. The Court will address each alleged error in turn.

    A.    **Opinions of Ms. Allen and Dr. Kenney**

The Plaintiff argues that the ALJ's RFC determination in not supported by substantial evidence because the ALJ did not properly consider the opinions of Dr. Kenney and Ms. Allen.

On February 15, 2011, Ms. Allen, who provided counseling to the Plaintiff since 2008, completed a "Checklist of Functional Limitations Resulting from a Mental/Intellectual

Impairment." [Tr. 585-88]. Therein, Ms. Allen opined that the Plaintiff exhibited marked difficulty in activities of daily living and maintaining social functioning. [Tr. 585-86]. Specifically, the Plaintiff was markedly limited planning daily activities, initiating and participating in activities independent of supervision or direction, avoiding altercations, getting along with family, and responding to those in authority. [*Id.*]. Ms. Allen elaborated that the Plaintiff's daily functioning becomes affected when she is depressed or anxious. [Tr. 585].

As to the Plaintiff's ability to perform tasks and concentrate, Ms. Allen opined that the Plaintiff had serious deficiencies in her ability to concentrate and assume increase mental demands associated with competitive work. [Tr. 586]. Ms. Allen attributed the limitations to the Plaintiff becoming easily stressed in work situations. [*Id.*]. Finally, as to repeated episodes of deterioration or decompensation within a work setting, Ms. Allen opined that the Plaintiff displayed episodes of decompensation, withdrawal from situations, poor decisionmaking, exacerbation of symptoms of illness, and deterioration from previous level of functioning. [*Id.*]. Ms. Allen explained that such episodes occur during stressful changes in the Plaintiff's life and caused by ongoing depression and signs of post-traumatic stress disorder. [Tr. 587].

Ms. Allen concluded that the Plaintiff would have difficulty holding down a job, responding to supervisors, remembering work-like procedures, making simple work-related (or similar) decisions, complete a normal workday and workweek without interruptions from psychically based symptoms, and respond appropriately to changes in a routine work setting. [Tr. 588].

A consultative examination was performed by Dr. Kenney on March 8, 2012. [Tr. 622-27] Dr. Kenney performed a clinical interview and mental status exam and completed a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." *Id.* The Plaintiff was

diagnosed with major depression and anxiety disorder. [Tr. 624]. In the medical source statement, Dr. Kenney opined that the Plaintiff suffered from several marked limitations, including the ability to make judgments on complex work-related decisions, interact appropriately with the public or supervisors, and respond appropriately to usual work situations and to changes in a routine work setting. [Tr. 625-26]. The medial source statement defines "marked" as "There is a serious limitation in this area. There is a substantial loss in the ability to effectively function." [Tr. 652].

The ALJ assigned little weight to Ms. Allen's and Dr. Kenney's opinions, finding their assessments suggested very severe limitations that if accurate would result in the Plaintiff having "great difficulty with almost any independent functioning" such that "[s]he arguably would have needed sustained inpatient care." [Tr. 20]. The ALJ reasoned that Ms. Allen's and Dr. Kenney's "conclusions are not consistent with the whole of the treatment history, which shows only occasional exacerbations, particularly in 2008" and considerable improvement and stabilization after 2008. [*Id.*]. With specific regard to Dr. Kenney, the ALJ found the limitations assessed in the medical source statement "somewhat inconsistent with his own narrative report, which does not describe such severe functional limitations." [*Id.*]. As to Ms. Allen, the ALJ noted that she "is not an acceptable medical source and her opinion is outweighed by those of the licensed psychologists discussed in this decision." [*Id.*]. The ALJ then gave great weight to the non-examining state agency physicians and consultative examiner Dr. Smith, noting that their opinions were not contradicted by any other source. [*Id.*].

The Plaintiff contends that the reasons cited by the ALJ are not supported by substantial evidence. The Court agrees. First, the Plaintiff argues that the ALJ mischaracterizes the limitations opined by Dr. Kenney and Ms. Allen as essentially requiring "sustained inpatient care." [Doc. 18 at 13, 16-17]. Indeed, the specific limitations opined do not support the ALJ's finding

8

that the Plaintiff would "have great difficulty performing almost any independent functioning," necessitating "sustained inpatient care." For example, Dr. Kenney found the Plaintiff was markedly limited in her ability to interact with the public and supervisors, as well as make judgments on complex work-related decisions or respond appropriately to usual work situations or changes in a work setting. These limitations are very specific to the Plaintiff's ability to carry out work-related activities in a work environment, and, therefore, it is unclear how these limitations support a finding that the Plaintiff cannot function independently in any regard. To be sure, Dr. Kenney also opined the Plaintiff could perform a host of other activities, concluding that the Plaintiff was only mildly to moderately limited in her ability to understand, remember, and carry out simple or complex instructions and interact with co-workers. [Tr. 625-26 (defining "moderate" as a slight limitation where an individual can still function satisfactorily)].

Similarly, while Ms. Allen opined some marked and serious limitations, her assessment also indicated that the Plaintiff was neither markedly or seriously limited in performing other functions such as, among other things, taking care of her personal hygiene, cleaning, shopping, cooperating and getting along with others, communicating clearly and effectively, and <u>functioning independently</u>. [Tr. 585-87]. Therefore, neither the marked or serious limitations opined by Dr. Kenney or Ms. Allen, nor their opinions as a whole, support a finding that the limitations, if accepted as true, would prelude almost any independent functioning to the extent that the Plaintiff would need "sustained inpatient care," as stated by the ALJ.

Second, the Plaintiff argues that the ALJ does not cite to any specific evidence in support of her conclusion that the Plaintiff's impairments "largely improved and stabilized after 2008" with "only occasional exacerbations of symptoms." [Doc. 18 at 14, 16-17]. The Court observes that a discussion of the medical evidence in general is completely absent from the ALJ's decision.

9

The ALJ summarily concludes, without citation to any specific medical records, that "the whole of the treatment history" is inconsistent with Dr. Kenney's and Ms. Allen's opinions. [Tr. 20]. The Commissioner argues that "an ALJ need not discuss every piece of evidence in the administrative record so long as she considers all of the claimant's medically determinable impairments and [her] opinion is supported by substantial evidence." [Doc. 24 at 9]. The Plaintiff, however, does not allege that the ALJ was required to comment on all the evidence but, instead, argues that the ALJ erred by failing to cite to *any* specific evidence to support her conclusion. The Court concurs and finds that it is insufficient for the ALJ to conclude that an opinion is contrary to the medical evidence of record and then fail to cite which evidence is in conflict. "The ALJ must build an accurate and logical bridge between the evidence and his conclusion." *Pollard v. Astrue*, No. 1:11-CV-186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012), *adopted sub nom.*, No. 1:11CV186, 2012 WL 2931310 (S.D. Ohio July 18, 2012).

The Commissioner also suggests that "the ALJ's general citation to the record were sufficient to demonstrate that she had considered the record as a whole." [Doc. 24 at 9]. But the ALJ only cited in general terms to the entirety of the Plaintiff's mental health treatment records when she later concluded that the opinions of the non-examining state agency physicians and consultative examiner Dr. Smith were entitled to "weight to the extent they support" the Plaintiff's RFC. [Tr. 20, 528-30, 562-64, 635-45]. Citing to a collection of exhibits that represents six years of mental health treatment without discussing any of the contents or the relevant and pertinent information found within, is not sufficient to demonstrate that they constitute substantial evidence to support the ALJ's decision to defer to some opinions while rejecting others. Moreover, in deferring to the opinions of the state agency physicians and Dr. Smith, the ALJ incorrectly noted

that there were no contrary opinions [Tr. 20], which is incorrect given the more restrictive opinions offered by Dr. Kenney and Ms. Allen.

The Commissioner further suggests that the brevity of the ALJ's decision is understandable given her previously authored decision in July 2012 where she "engaged in a lengthy and detailed discussion of the medical and other evidence that supported the RFC . . . ." [Doc. 24 at 7]. That decision, however, has been vacated by the Appeals Council who remanded the case back to the ALJ for further proceedings. Although the case was remanded because vocational expert evidence was found to be necessary, the ALJ was directed to "issue a new decision" with specific instructions to further consider the Plaintiff's RFC "and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations." [Tr. 100]. Generally, when the Appeals Council vacates and remands an ALJ's decision, the decision is vacated in its entirety. *Hearing, Appeals, and Litigation Law Manual ("HALLEX")*, I-3-7-1, 1993 WL 643162 (April 26, 2016). Regardless, the ALJ was specifically instructed to reassess the Plaintiff's RFC and provide a supported analysis, with citation to the record, for the limitations assessed. The Court finds the ALJ did not comply with the remand order in this regard.

Finally, the Plaintiff disagrees with the ALJ's finding that the narrative portion of Dr. Kenney's opinion is "somewhat inconsistent" with the limitations assessed in the medical source statement, arguing that the ALJ does not identify any specific inconsistencies. [Doc. 18 at 15]. Dr. Kenney's narrative described the Plaintiff as maintaining a minimal level of independence, adaptability, sustainability, and effectiveness. [Tr. 623]. The Plaintiff was mentioned to have infrequent interactions with others, noting that she does not have friends or attends church, and she grocery shops and visits with her children once a month. [*Id.*]. Moreover, the Plaintiff related she is uncomfortable in public settings because she feels as though others are always looking at

11

her. [*Id.*]. On examination, Dr. Kenney observed that the Plaintiff's affect was restricted, she had slight shaking in her hands, she gets uncomfortable in public, she has feelings of worthlessness, she experiences crying spells, and she has experienced increase episodes of anxiety where she gets shaky, nervous, cannot breathe, and feels smothered. [Tr. 623]. The Court finds that the narrative portion of Dr. Kenney's opinion could reasonably support the marked limitations assessed. Because the ALJ does not explain the specific inconsistencies between Dr. Kenney's narrative decision and the limitations assessed, and given the lack of reasoned and supported findings given by the ALJ as discussed above, the Court finds that remand is appropriate so that the ALJ may reweigh the opinions of Dr. Kenney and Ms. Allen and provide a reasoned and supported basis for the weight assigned.

  **B. Credibility**

The Plaintiff also contends that the ALJ's credibility determination is not supported by substantial evidence because the ALJ solely considered the Plaintiff's work activity following her alleged onset date.

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant." *Walters*, 127 F.3d at 531. The ALJ's finding regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* However, the ALJ's finding must be supported by substantial evidence. *Id.*

In finding the Plaintiff less than fully credible, the ALJ observed that the Plaintiff admitted she engaged in months of work activity after her alleged onset date. [Tr. 20]. The ALJ previously found at step one that the Plaintiff worked for several months in 2009 and on a part-time basis for her nephew in 2013 and 2014, neither of which constituted substantial gainful activity. [Tr. 17].

In the RFC portion of the decision, the ALJ found that the Plaintiff's ability to work after her alleged onset date was contrary to her assertion that she could not perform any sustained work activity. [Tr. 20]. The ALJ recognized that the Plaintiff's work activity did not rise to the level of substantial gainful activity but nonetheless evinced that she was not as limited as she alleged. [*Id.*].

The Plaintiff complains that the ALJ only considered her unsuccessful work attempts which fall short of substantial gainful activity, and the ALJ did not take into account that the Plaintiff was working for her nephew who allowed her to be late, take frequent breaks, and miss work frequently. [Doc. 18 at 21 (citing hearing testimony, Tr. 57-58)]. The Commissioner counters that the ALJ did not dismiss the Plaintiff's subjective allegations solely on the basis of her work history but also considered a number of other inconsistencies including the objective medical evidence, the Plaintiff's minimal and conservative treatment, the Plaintiff's improvement with treatment, and the Plaintiff's activities of daily living. [Doc. 24 at 11].

As an initial matter, the Court observes that the Plaintiff's attempts to work after her alleged onset date, even if the work does not rise to the level of substantial gainful activity, is an appropriate factor to consider. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (explaining that in evaluating the intensity and persistency of symptoms, evidence about a claimant's prior work may be considered). Moreover, the Court notes that the ALJ did not rely on the evidence to demonstrate that the Plaintiff could perform substantial gainful activity but to demonstrate that her impairments were not as limiting as she alleged. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Notwithstanding the accommodations the Plaintiff testified were provided when she worked for her nephew in 2013 and 2014, the Court finds that the ALJ appropriately considered

13

the Plaintiff's work history in assessing the Plaintiff's credibility. The Plaintiff suggests that the accommodations received undermine a finding that the Plaintiff can perform substantial gainful activity. [Doc. 18 at 21 (citing 20 C.F.R. § 404.1573(c)]. But again, the ALJ did not rely on the Plaintiff's work attempts to show she can perform substantial gainful activity. Furthermore, the ALJ also cited to the Plaintiff's work attempts in 2009, for which there is no evidence as to what, if any, accommodations the Plaintiff received during that time.

Even so, the Court also observes that the ALJ does not appear to have considered any other factor in assessing the Plaintiff's credibility. In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, received or have received for relief of pain or other symptoms; (vi) any measures that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 1529(c)(4), 416.929(c)(4). While there is a difference between what the ALJ must consider and what she must say in her written decision, and not every factor need be explicitly discussed, the brevity of the ALJ's decision suggests that the Plaintiff's work history was indeed the only factor taken into consideration. Further, on remand, the ALJ should discuss how unsuccessful attempts to work, that fell short of any "substantial gainful activity," adversely affects the Plaintiff's credibility and claims that she could not perform sustained work activities.

Although the Commissioner argues that the ALJ consider other factors such as daily living

14

activities, the Court notes that the ALJ considered this factor in the context of the "paragraph B" criteria at step three. [Tr. 18]. Furthermore, the ALJ did not discuss what activities the Plaintiff could perform and summarily concluded that the Plaintiff only had mild restrictions in this area by generally citing to a collection of exhibits that make up the Plaintiff's mental health treatment records. [*Id.*]. And while the Commissioner also argues that the ALJ cited to the Plaintiff's minimal and conservative treatment, nowhere is this finding made, either explicitly or implicitly, in the ALJ's decision.

Finally, the Court finds that because this case is being remanded for further consideration of Dr. Kenney's and Ms. Allen's opinions, reassessment of the Plaintiff's credibility is appropriate. *See Wilson v. Berryhill*, No. 3:16-CV-95-HBG, 2017 WL 2790186, at *7 (E.D. Tenn. June 27, 2017) ("The ALJ's reconsideration of the medical opinions of record will necessitate a reexamination of the Plaintiff's credibility.").

### C.  Failure to Comply with Regulations

The Plaintiff argues that the ALJ failed to comply with 20 C.F.R. §§ 404.1517 and 416.917 when a second consultative examination was ordered by the ALJ following remand from the Appeals Council, but the consultative examiner, Dr. Smith, was not provided any of the Plaintiff's medical records.

Pursuant to 20 C.F.R. §§ 404.1517 and 416.917, consultative examiners must be provided with "any necessary background information" concerning a claimant's condition. Dr. Smith performed a psychological evaluation and completed a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" on February 10, 2014. [Tr. 635-45]. In the psychological evaluation, Dr. Smith noted, "No records were available for review at the time of evaluation." [Tr. 635]. Relying on *Brantley v. Comm'r of Soc. Sec.*, 637 F. App'x 888, 894 (6th Cir. 2016), the

Plaintiff maintains that the ALJ's failure to provide Dr. Smith with medical records violates the ALJ's obligation to provide "necessary background information." [Doc. 18 at 21]. The Commissioner contends that *Brantley* does not establish a *per se* rule that medical records will always constitute "necessary background information." [Doc. 24 at 12-13].

The Commissioner's position in the instant case is identical to the argument raised in *Brantley* and rejected by the Court of Appeal for the Sixth Circuit. In *Brantley*, the Commissioner insisted that "background information is not equivalent to medical records" and to hold otherwise "is essentially asking the Court to impose an additional requirement on the agency that is beyond the plain meaning of the regulation." 637 F. App'x at 894. The Sixth Circuit reasoned that the Commissioner's argument was contrary to its own policy set forth in its Program Operations Manual System ("POMS") and Hearings, Appeals and Litigation Law Manual ("HALLEX"):

> In the course of discussing "background information" for consultative examinations, the POMS specifically instructs SSA employees to provide consultative examiners with "duplicates or summaries of relevant evidence such as . . . [m]edical evidence of record including any medical opinion(s)." Soc. Sec. Admin., DI 22510.017 Consultative Examination (CE) Appointment Notice, https://secure.ssa.gov/apps10/poms.nsf/lnx/042251001 (last visited Oct. 15, 2015). Additionally, the Commissioner's . . . . [HALLEX] instructs the ALJ or hearing office staff to supplement a request for a consultative examination with "[a] medical exhibits folder which contains evidence relating to the type of examination ordered with instructions for the State agency to send the folder to the consultative examiner for review." Soc. Sec. Admin., Consultative Examinations and Tests, Hearings, Appeals, and Litig. Law Manual, http://ssa.gov/OP_Home/hallex/I–02/I–2–5–20.html (last visited Oct. 15, 2015).

*Id.* at 894-95. The Sixth Circuit reasoned that the guidance set forth in the POMS and HALLEX avoided the "absurdity" of "necessary background information" being interpreted as meaning something other than medical records. *Id.* at 895.

The Court finds the Commissioner's attempt to distinguish *Brantley* unpersuasive. The Commissioner asserts that unlike the claimant in *Brantley*, the Plaintiff in this case was a good historian of average intellect with no memory problems, and Dr. Smith was able to provide a detailed narrative that supported her assessment of the Plaintiff's functioning. [Doc. 24 at 12]. In other words, Dr. Smith was "still able to glean the background necessary for [her] to proceed with [her] examination[] and to render [a] professional opinion[]." *Brantley*, 637 F. App'x at 895. The *Brantley* Court rejected this argument, observing that "even if a lack of medical records does not entirely prevent a consultative examiner from rendering 'a reasonably good estimate of his current intellectual functioning,' it can impair the examiner's ability to present his conclusions with greater precision and confidence or bolster them with references to the medical evidence." *Id.* at 896.

The Commissioner also points out that the consultative examiner in *Brantley* made repeated comments about the lack of medical records whereas here, Dr. Smith did not. [Doc. 24 at 12-13]. The Commissioner's argument amounts to a distinction without a difference. The regulations mandate that consultative examiners be given "any necessary background information." 20 C.F.R. §§ 404.1517, 416.917. Therefore, regardless of whether Dr. Smith commented once or repeatedly throughout the evaluation that she had not received any medical records, the ALJ was no less obligated to provide Dr. Smith with the Plaintiff's medical records, and the failure to do so was error. *See Barnett v. Berryhill*, No. 3:16-CV-00279, 2017 WL 2537362, at *3 (S.D. Ohio June 12, 2017) (holding that 20 C.F.R. § 404.1517 "triggered a mandatory procedural duty related to Plaintiff's medical records"), *adopted by*, 3:16-CV-279, 2017 WL 4281126 (S.D. Ohio Sept. 27, 2017).

Finally, the Commissioner suggests that the Plaintiff's medical records are not "necessary background information" because they would not have aided Dr. Smith's efforts in assessing the

17

Plaintiff's current level of functioning and abilities since the Plaintiff's most recent treatment records are from January 2012, two years prior to Dr. Smith's February 2014 examination. To the contrary, the Plaintiff continued to receive mental health treatment at Cherokee Health Systems throughout 2012, 2013, and 2014 [Tr. 663-703, 786-90, 826-47], therefore providing current and relevant information to aid Dr. Smith in the assessment of the Plaintiff's functional limitations.

Accordingly, the Plaintiff's assignment of error is well-taken. The Court finds the failure of the ALJ to comply with agency regulations prejudiced the Plaintiff and warrants remand for proper consideration of the Plaintiff's claims. *See Brantley*, 637 F. App'x at 896 ("Not to reverse a decision that resulted from the ALJ's violation of the law—either negligently or otherwise—required for a fair decision would 'afford the Commissioner the ability [to] violate the regulation with impunity and render protections promised therein illusory.'").

## V.  CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Summary Judgment [**Doc. 17**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **DENIED**. This case will be **REMANDED** to the Social Security Administration with instructions that the ALJ (1) reweigh Dr. Kenney's and Ms. Allen's opinions and provide appropriate rationale with specific references to the evidence of record in support of the weight assigned, (2) reassess the Plaintiff's credibility, and (3) order a new consultative examination and ensure that the examiner is provided with the Plaintiff's medical records for review.

ORDER ACCORDINGLY.

                s/ C. Clifford Shirley, Jr.
             United States Magistrate Judge